**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                   :
LIONELL G. MILLER,                 :
                                   :        Civil Action
              Plaintiff,           :        11-0859 (FLW)
                                   :
         v.                        :        **O P I N I O N**
                                   :
MICHELLE R. RICCI, et al.,         :
                                   :
              Defendants.          :
_____:

**Wolfson**, District Judge:

     Plaintiff, who appears to be a convicted prisoner currently
confined at the New Jersey State Prison, Trenton, New Jersey,
seeks to bring this action _in forma pauperis_, pursuant to 42
U.S.C. § 1983, alleging violations of his constitutional rights.
Based on his affidavit of indigence and the absence of three
qualifying dismissals within 28 U.S.C. § 1915(g), the Court will
grant Plaintiff's application to proceed _in forma pauperis_,
pursuant to 28 U.S.C. § 1915(a), and will order the Clerk to file
the Complaint.

     At this time, the Court must review the Complaint to
determine whether it should be dismissed as frivolous or
malicious, for failure to state a claim upon which relief may be
granted, or because it seeks monetary relief from a defendant who
is immune from such relief.

I. __BACKGROUND__

    **A.   Allegations Stated in the Complaint**

The facts of Plaintiff's Complaint are presented in a narrative detailing the events that took place for a number of years before they culminated in an altercation of February 24, 2009.  See Docket Entry No. 1.

According to the Complaint, Plaintiff was involved, at one point in time, with a certain woman who eventually entered in a relationship with a correctional officer.  See id. at 12.  Upon learning of that relationship, Plaintiff ceased his contacts with this woman.  See id.  The Complaint alleges that Plaintiff's election to cease his contacts with this woman caused animosity between Plaintiff and the correctional officers employed at the New Jersey State Prison.  See id.  According to the Complaint, the correctional officers began harassing Plaintiff; such harassment started, seemingly, years before the events of February 2009.  See id.

The Complaint asserts that, as part of their harassment campaign, correctional officers tried to recruit inmates to assault Plaintiff.  See id.  However, since the Complaint is silent as to any such attacks, the Court presumes that these officers' efforts were unsuccessful, and so Plaintiff was not harmed by any inmate recruited by the officers.  See generally, Docket Entry No. 1.

Page -2-

Plaintiff also asserts that, during this alleged multi-year harassment campaign, Plaintiff's personal property was stolen or destroyed by correctional officers, and he was wrongly designated as a member of the "Bloods Gang," as a result of which his mail was systemically detoured to a Newark office in charge of monitoring gang activities.  See id. at 12.

Plaintiff alleges that he submitted an inmate remedy form to the warden of the New Jersey State Prison, Defendant Ricci, informing her about the aforesaid acts of harassment, and Plaintiff's sister sent numerous letters to Defendant Ricci and other officials at the New Jersey Department of Corrections expressing her concern.  See id. at 12-13.  According to the Complaint, Plaintiff's grievance and his sister's letters did not produce a response.  See id.  The Complaint is silent as to when Plaintiff submitted his grievance and Plaintiff's sister sent her letters, but the context of Plaintiff's narrative unambiguously indicates that these events took place long before February 24, 2009.

Plaintiff alleges that, on February 24, 2009, Plaintiff was first asked to go through the metal detector twice and, later that day, stopped for a pat-search on his way to the mess hall.  See id. at 5.  According to the Complaint, during this pat-search, Defendant Officer Nagy made a verbal statement, which Plaintiff found disrespectful and to which Plaintiff replied that

he did not wish to be talked to by correctional officers.  <u>See</u> <u>id.</u>  Plaintiff maintains that his response caused another Officer, Defendant Fry, to twist Plaintiff's wrist, and –– right thereafter –– Plaintiff was pushed to the floor and assaulted by Officers Fry, Nagy, Perez, Tyson and Wojciechowski, each of whom was kicking and beating Plaintiff.  <u>See</u> <u>id.</u> at 5-8.  According to the Complaint, as a result of such altercation, Plaintiff's forehead and left eye suffered substantial swelling, and his mouth was "burst open."[1]  <u>See</u> <u>id.</u> at 8.

On February 25, 2009, that is, the day following the altercation, Plaintiff received five disciplinary charges; Plaintiff asserts that he was charged with assaulting the Officers, refusing to submit to a pat-search and acting in a disruptive manner.  <u>See</u> <u>id.</u> at 9.  According to the Complaint, Plaintiff's disciplinary hearing was initially scheduled for February 27, 2009, but then was postponed.  <u>See</u> <u>id.</u>  During this postponement period, Plaintiff requested to view the surveillance tape, which request was granted.  <u>See</u> <u>id.</u> at 9-10.

Plaintiff further asserts that, on March 5, 2009, he was transferred from the New Jersey State Prison to the East Jersey State prison, where he was housed in a segregated unit.  <u>See</u> <u>id.</u> at 10.  On March 10, 2009, Plaintiff was, allegedly, informed

---

[1] The Court is not entirely clear as to the meaning of the "burst open" expression.  The Court presumes that Plaintiff intended to assert that his mouth suffered a physical injury.

that he was sanctioned without any disciplinary hearing; the sanctions imposed included a brief loss of recreational time, prolonged housing in an administrative segregation unit and loss of good-conduct credits. See id.

The Complaint further asserts that a paralegal at the New Jersey State Prison submitted, without Plaintiff's permission or knowledge, an appeal as to Plaintiff's sanctions. See id. at 11. That appeal was denied by Superintendent Drumm, who affirmed both the charges and sanctions imposed. See id. According to the Complaint, Plaintiff too submitted an appeal; that appeal was not responded to. See id. at 10-11.

Plaintiff seeks monetary damages from: (a) the Officers involved in the February 24, 2009, altercation; (b) the officers who imposed sanctions against Plaintiff; (c) the warden and Superintendent Drumm. See id. at 14. Plaintiff also requests transfer to the prison's general population, restoration of lost good-conduct credits and declaratory relief. See id. at 14-16. As part of his challenges, Plaintiff asserts that administrative due process was denied to him because he was sanctioned without a hearing.

**B.   State Court's Determination**

Plaintiff appealed the alleged denial of administrative due process to the state courts. His claims were denied at both the Law Division and Appellate Division levels, and the Supreme Court

of New Jersey denied him certification.   See Miller v. NJ Dep't
of Corrections, 203 N.J. 606 (2010).

Describing Plaintiff's challenges, the Appellate Division
also listed the following facts revealed during Plaintiff's state
proceedings:

> [Plaintiff] appeals . . . a hearing officer's finding that he
> committed . . . two acts of assault, . . . refusal to
> submit to a search, . . . and conduct which disrupts or
> interferes with security or orderly running of the
> correctional facility . . . . [Plaintiff] argues he was
> denied his rights of due process. . . .  On February 24,
> 2009, [Plaintiff] was housed at Trenton State Prison.  While
> moving from the prison's rotunda area to the mess hall, . .
> . Officer . . . Perez pulled [Plaintiff] from the line and
> requested him to produce his identification card.  According
> to [Plaintiff], Perez had pulled him from line earlier that
> same morning.  [Plaintiff]  was then told to keep his hands
> raised while Perez performed a pat search.  When Perez
> started the pat down, [Plaintiff]  dropped his hands and
> began arguing with him. [Officer] Fry came to Perez's
> assistance.  When Fry observed [Plaintiff]'s hands going
> into his pockets, he grabbed [Plaintiff's] left hand and
> ordered him to place his hands behind his back.  [Plaintiff]
> refused, said "fuck you," and stood in a fighting position.
> [Plaintiff] then punched Fry in the head and struck Perez.
> [Plaintiff] resisted the efforts of several [Officers] to
> subdue him.  During this struggle, [Plaintiff] also punched
> [Officer] Nagy in the face.  Finally, [Plaintiff] was pushed
> to the ground and placed in handcuffs and leg irons.
> [Plaintiff's] conduct caused the initiation of an emergency,
> Code *33.  All institutional personnel were required to stop
> until [Plaintiff] was subdued.  Once order was restored,
> [Officers] Perez, Nagy and Fry reported to the medical
> department to assess their injuries.  All three were taken
> to Robert Wood Johnson Hospital for evaluation and
> treatment.  The disciplinary review hearing began on
> February 27, 2009. [Plaintiff] pled not guilty.  His request
> for counsel substitute was granted.  He was then granted an
> adjournment to review the surveillance video, provided to
> him that day. [Plaintiff] objected, as the video did not
> include "Perez harassing him" earlier that morning.  A
> different hearing officer resumed the hearing on March 2,
> 2009.  After considering all the testimonial and documentary

evidence submitted, the hearing officer found [Plaintiff]
guilty of all infractions and recommended [such] sanctions
[as] fifteen days detention, . . . 365 days loss of
commutation time, 365 days of administrative segregation and
thirty-eight days loss of recreation privileges [etc.]   On
March 5, 2009, [Plaintiff] was transferred to the
administrative segregation unit of East Jersey State prison.
He maintains he was never informed of the March 2 hearing.
[Plaintiff] filed an institutional appeal from the hearing
officer's adverse decision.  On March 13, 2009, Assistant
Superintendent J. Drumm upheld the hearing officer's
determination and sanctions.
. . .
[Plaintiff's] multifaceted argument suggests he was not
provided a written statement of the charges against him, was
not permitted to attend the hearing, and did not request the
counsel substitute who appeared on his behalf at the final
hearing.  Further, he suggests his review of the video was
inconclusive as to the charges as it does not show him
dropping his hands or placing them in his pockets, and that
there is no evidence of assault, yet he was found guilty of
assaulting two [Officers] although three submitted reports.
[Plaintiff] asserts he has been a target of harassment and
retaliation by the [Officers] since 2006.  We reject
[Plaintiff's] suggestion that documents obtained following
the hearing, if considered, would have proven he was a
victim of harassment.  This issue may not be raised for the
first time on appeal, and otherwise, the claim lacks merit.
. . . Regarding [Plaintiff's] procedural due process
challenges, we agree these proceedings must afford prisoners
certain procedural due process rights, including written
notice of the charges twenty-four hours before the hearing,
an impartial tribunal, a limited right to call witnesses,
present documentary evidence and to confront and
cross-examine witnesses where necessary for an adequate
presentation of the evidence, and a written statement of the
evidence relied upon and the reasons for the sanctions
imposed.  However, contrary to [Plaintiff's] suggestion,
prison disciplinary proceedings are not part of a criminal
prosecution and thus the full panoply of rights due a
defendant in such a proceeding does not apply.  The record
reflects [Plaintiff] received notice of the charges, was
granted counsel substitute and provided a review of the
evidence, including the various reports and the videotape.
In fact, the final report concurs with counsel substitute's
position that the video alone is inconclusive of the assault
charges.  Together, [Plaintiff] and his counsel substitute
reviewed the videotape.  During the final hearing, counsel

substitute appeared and offered [Plaintiff's] defense.  No
witnesses were called and [Plaintiff] declined to confront
the DOC's witnesses.  Contrary to [Plaintiff's] contention,
his counsel substitute prepared and presented his defense
after consultation and review of all the records considered
by the hearing officer.  Finally, the hearing officer
provided a detailed statement of reasons based upon the
evidence reviewed.  Following our review of the record, we
conclude the adjudication of the infractions was supported
by substantial credible evidence.  We also conclude that the
disciplinary proceedings were conducted in accordance with
all applicable due process requirements.  [Plaintiff's]
argument that he was deprived of his due process rights are
belied by the record, and the DOC's decision was not
arbitrary, capricious, or unreasonable.

Miller v. NJ Dep't of Corrections, 2010 WL 1929827 (N.J. Super.

Ct. App. Div., May 07, 2010) (citations and quotation marks

omitted).

## II.   <u>STANDARD OF REVIEW</u>

In determining the sufficiency of a complaint, the Court

must be mindful to construe the facts stated in the complaint

liberally in favor of the plaintiff.  See <u>Erickson v. Pardus</u>, 551

U.S. 89 (2007); <u>Haines v. Kerner</u>, 404 U.S. 519 (1972); <u>United

States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992).  Indeed, it is

long established that a court should "accept as true all of the

[factual] allegations in the  complaint and reasonable inferences

that can be drawn therefrom, and view them in the light most

favorable to the plaintiff."  <u>Morse v. Lower Merion School Dist.</u>,

132 F.3d 902, 906 (3d Cir. 1997).  However, while a court will

accept well-pled allegations as true, it will not accept bald

assertions, unsupported conclusions, unwarranted inferences, or

sweeping legal conclusions cast in the form of factual allegations.  See id.

Addressing the clarifications as to the litigant's pleading requirement stated in the United States Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the Court of Appeals for the Third Circuit provided the courts in this Circuit with detailed and careful guidance as to what kind of allegations qualify as pleadings sufficient to pass muster under the Rule 8 standard.  See Phillips v. County of Allegheny, 515 F.3d 224, 230-34 (3d Cir. 2008).  Specifically, the Court of Appeals observed as follows:

> "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation [is] to provide the 'grounds' of his 'entitle[ment] to relief' [by stating] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ."  Twombly, 127 S. Ct. at 1964-65 . . . Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  Id. at 1965 n.3. . . . "[T]he threshold requirement of Rule 8(a)(2) [is] that the 'plain statement [must] possess enough heft to 'sho[w] that the pleader is entitled to relief.'"  Id. at 1966.  [Hence] "factual allegations must be enough to raise a right to relief above the speculative level."  Id. at 1965 & n.3. . . . [Indeed, it is not] sufficient to allege mere elements of a cause of action; instead "a complaint must allege facts suggestive of the proscribed conduct."  Id.

> Id. at 230-34 (original brackets removed).

This pleading standard was further refined by the United States Supreme Court in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), where the Court observed:

[In any civil action, t]he pleading standard . . .
demands more than an unadorned ["]the-defendant-
unlawfully-harmed-me["] accusation. [<u>Twombly</u>, 550
U.S.] at 555 . . . .  A pleading that offers "labels
and conclusions" or "a formulaic recitation of the
elements of a cause of action will not do." [<u>Id.</u>] at
555.  Nor does a complaint suffice if it tenders
"naked assertion[s]" devoid of "further factual
enhancement." <u>Id.</u> at 557. . . . A claim has facial
plausibility [only] when the plaintiff pleads factual
content . . . .  <u>Id.</u> at 556. [Moreover,] the
plausibility standard . . . asks for more than a sheer
possibility that a defendant has acted unlawfully.
<u>Id.</u> [Indeed, even w]here a complaint pleads facts that
are "merely consistent with" a defendant's liability,
[the so-alleging complaint still] "stops short of
[showing] plausibility of 'entitlement to relief.'"
<u>Id.</u> at 557 (brackets omitted). [<u>A fortiori,</u>] the tenet
that a court must accept as true all of the
allegations contained in a complaint is inapplicable
to legal conclusions [or to t]hreadbare recitals of
the elements of a cause of action, supported by mere
conclusory statements [,<u>i.e.,</u> by] legal conclusion[s]
couched as a factual allegation [e.g.,] the
plaintiffs' assertion of an unlawful agreement [or]
that [defendants] adopted a policy "'because of,' not
merely 'in spite of,' its adverse effects upon an
identifiable group." . . . . [W]e do not reject these
bald allegations on the ground that they are
unrealistic or nonsensical. . . .  It is the
conclusory nature of [these] allegations, rather than
their extravagantly fanciful nature, that disentitles
them to the presumption of truth. . . . [Finally,] the
question [of sufficiency of] pleadings does not turn .
. . the discovery process.  <u>Twombly</u>, 550 U.S.] at 559
. . . . [The plaintiff] is not entitled to discovery
[where the complaint alleges any of the elements]
"generally," [<u>i.e.,</u> as] a conclusory allegation
[since] Rule 8 does not [allow] pleading the bare
elements of [the] cause of action [and] affix[ing] the
label "general allegation" [in hope to develop facts
through discovery].

<u>Iqbal</u>, 129 S. Ct. at 1949-54.

III. <u>**SECTION 1983 ACTIONS**</u>

A plaintiff may have a cause of action under 42 U.S.C. §

1983 for certain violations of his constitutional rights.

Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory . . . subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress . . . .

Thus, to state a claim for relief under § 1983, a plaintiff
must allege, first, the violation of a right secured by the
Constitution or laws of the United States and, second, that the
alleged deprivation was committed or caused by a person acting
under color of state law.  See West v. Atkins, 487 U.S. 42, 48
(1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir.
1994).

IV.   **DISCUSSION**

    A.   **Rooker-Feldman Doctrine**

"The Rooker-Feldman doctrine deprives a federal district
court of jurisdiction to review, directly or indirectly, a state
court adjudication."  Judge v. Canada, 208 Fed. App'x 106, 107
(3d Cir. 2006) (citing D.C. Court of Appeals v. Feldman, 460 U.S.
462 (1983), and Rooker v. Fidelity Trust Co., 263 U.S. 413
(1923)).  This doctrine even precludes federal courts from
evaluating "constitutional claims that are inextricably
intertwined with the state court's decision in a judicial

proceeding." FOCUS v. Allegheny County Court of Common Pleas, 75 F.3d 834, 840 (3d Cir. 1996) (internal quotations omitted).

A federal claim is "inextricably intertwined" with a state court's decision if the "claim succeeds only to the extent that the state court wrongly decided the issues before it.  In other words, Rooker-Feldman precludes a federal action if the relief requested in the federal action would effectively reverse the state decision or void its ruling." Id. (quoting Charchenko v. City of Stillwater, 47 F.3d 981, 983 (8th Cir. 1995)).  The Rooker-Feldman doctrine applies when a plaintiff seeks relief that would require the federal court to determine that the state court judgment was erroneously entered or must take action that would render that judgment ineffectual.  See Gulla v. North Strabane Twp., 146 F.3d 168, 172 (3d Cir. 1998); see also Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 291-92 (2005) (explaining that 28 U.S.C. § 1257 has long been interpreted as vesting authority to review a state court's judgment solely in the Supreme Court).

**B.   Plaintiff's Claims Subject to Sua Sponte Dismissal**

**1.   Claims Associated with Disciplinary Proceedings**

**a.   Due Process Challenges**

Here, Plaintiff raises due process challenges to his disciplinary proceedings.  However, under the Rooker-Feldman doctrine, this Court is without jurisdiction to address these

challenges in light of the state courts' adjudication of that claim on merits.  Correspondingly, the Court is constrained to dismiss these challenges for lack of jurisdiction.

**b.   Claims Based on Loss-of-Recreation Sanction**

Moreover, under the Rooker-Feldman doctrine, this Court is without jurisdiction to address Plaintiff's challenges based on temporary loss of recreation privileges, since these challenges, too, were adjudicated on the merits by the state courts.

Alternatively, to the degree these challenges could be construed as a broader claim that any  denial of recreation sanction is per se unconstitutional, Plaintiff's allegations are also subject to dismissal, on the grounds of failure to state a claim upon which relief can be granted.

Plaintiff has a protected right in being incarcerated at a place of confinement conforming to the standards set forth by the Eighth Amendment.  The Constitution "does not mandate comfortable prisons," Rhodes v. Chapman, 452 U.S. 337, 349 (1981), but neither does it permit inhumane ones, and it is now settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  Helling v. McKinney, 509 U.S. 25, 31 (1993). In its prohibition of "cruel and unusual punishments, the Eighth Amendment . . . imposes duties on prison officials, who must provide humane conditions of confinement."  Hudson v. Palmer, 468

U.S. 517, 526-527 (1984); see also Helling, 509 U.S. at 31-32;
Washington v. Harper, 494 U.S. 210, 225 (1990); Estelle v.
Gamble, 429 U.S. 97, 103 (1976).  The Eighth Amendment prohibits
conditions which involve the unnecessary and wanton infliction of
pain or are grossly disproportionate to the severity of the crime
warranting imprisonment.  See Rhodes, 452 U.S. at 346, 347.  The
cruel and unusual punishment standard is not static, but is
measured by "the evolving standards of decency that mark the
progress of a maturing society."  Id. at 346 (quoting Trop v.
Dulles, 356 U.S. 86, 101 (1958)).

        However, claims based on insufficient recreation may survive
sua sponte dismissal only if the inmate asserts facts showing
that denial of recreation was such that it actually caused injury
to the inmate's ability to control his/her muscular functions or
maintain his/her range of physical motions.  See Cary v. Rose,
902 F.2d 37 (7th Cir. 1990) (where detainees alleged that they
were denied adequate exercise and recreation but admitted that
they had room in their cells and in the hallway to run in place
or perform calisthenics, their allegations could not amount to a
constitutional claim because, unless extreme, lack of exercise
could not be equated to a medically-threatening situation); see
also Antonelli v. Sheahan, 81 F.3d 1422, 1432 (7th Cir. 1996)
(affirming dismissal of detainee's claims because "[l]ack of
exercise may rise to a constitutional violation in extreme and

prolonged situations where movement is denied to the point that
the inmate's health is threatened"); Ellis v. Crowe, 2009 U.S.
Dist. LEXIS 125154, at *36 (E.D. La. Dec. 18, 2009) (detainee's
claim should be dismissed if the facts he alleges do not show
that he was so deprived of recreation for a significant time
period to suffer a physical injury, such as muscle atrophy or
loss of range of motion, as a result of the alleged limitations
on exercise).

Here, Plaintiff's Complaint asserts no facts suggesting that
Plaintiff suffered a physical injury as a result of loss of
recreational time.  Rather, the Complaint reflects only
Plaintiff's disappointment with the loss of pleasure he was/is
deriving from recreational activities.  Such pleasure, however,
is not a constitutionally protected right.  Therefore,
Plaintiff's challenges based on temporary loss of recreational
time is subject to dismissal with prejudice.

### c.   Claims Based on Loss-of-Credit Sanction

Federal law provides two avenues of relief to prisoners: a
petition for habeas corpus and a civil rights complaint. See
Muhammad v. Close, 540 U.S. 749, 750 (2004).  "Challenges to the
validity of any confinement or to particulars affecting its
duration are the province of habeas corpus . . . [while] requests
for relief turning on circumstances of confinement [fall within

the realm of] a § 1983 action."² <u>Id.</u>  The Court of Appeals for

the Third Circuit explained the distinction between the

availability of civil rights relief and the availability of

habeas relief as follows:

> [W]henever the challenge ultimately attacks the "core of
> habeas" - the validity of the continued conviction or the
> fact or length of the sentence - a challenge, however
> denominated and regardless of the relief sought, must be
> brought by way of a habeas corpus petition. Conversely, when
> the challenge is to a condition of confinement such that a
> finding in plaintiff's favor would not alter his sentence or
> undo his conviction, an action under § 1983 is appropriate.

<u>Leamer v. Fauver</u>, 288 F.3d 532, 542 (3d Cir. 2002).

Therefore, a prisoner could be entitled to a writ of habeas

corpus if he "seek[s] to invalidate the duration of [his]

confinement - either directly through an injunction compelling

speedier release or indirectly through a judicial determination

that necessarily implies the unlawfulness of the [government's]

custody."  <u>See</u> <u>Wilkinson v. Dotson</u>, 544 U.S. 74, 81 (2005).  In

contrast, if a judgment in the prisoner's favor would not affect

---

² In a series of cases beginning with <u>Preiser v. Rodriguez</u>,
411 U.S. 475 (1973), the Supreme Court analyzed the intersection
of civil rights and habeas corpus.  In <u>Preiser</u>, state prisoners,
who had lost good-conduct-time credits by the New York State
Department of Correctional Services as a result of disciplinary
proceedings, brought a § 1983 action seeking injunctive relief to
compel restoration of the credits, which would have resulted in
their immediate or speedier release.  <u>See</u> <u>id.</u> at 476.  The
prisoners did not seek compensatory damages for the loss of their
credits.  <u>See</u> <u>id.</u> at 494.  Assessing the prisoners' challenge,
the Supreme Court held that a prisoner must bring a suit for
equitable relief that, effectively, challenges "the fact or
duration of confinement" as a habeas corpus petition.  <u>See</u> <u>id.</u> at
500.

the fact or duration of the prisoner's incarceration, habeas relief is unavailable and a civil complaint is the appropriate form of remedy.  See, e.g., Ganim v. Federal Bureau of Prisons, 235 Fed. App'x 882 (3rd Cir. 2007) (holding that district court lacks habeas jurisdiction to entertain prisoner's challenge to his transfer between federal prisons); Bronson v. Demming, 56 Fed. App'x 551, 553-54 (3rd Cir. 2002) (habeas relief is unavailable to inmate seeking release from disciplinary segregation to general population).

Here, the closing lines in the Complaint indicate that Plaintiff might be interested in seeking restoration of his lost good-conduct credit.  Construed as a habeas claim, these challenges are not barred by the Rooker-Feldman doctrine: "[t]he writ of habeas corpus is a major exception to the doctrine of res judicata, as it allows relitigation of a final state-court judgment disposing of precisely the same claim."  Lehman v. Lycoming County Children's Services Agency, 458 U.S. 502, 512 (1982).  However, so construed, these challenges are subject to dismissal in *this action* for lack of jurisdiction; such dismissal will be without prejudice to Plaintiff raising these claims in a habeas matter.[3]

---

[3] No statement made in this Opinion or in the Order filed herewith shall be construed as expressing this Court's position as to substantive or procedural validity or invalidity of such Plaintiff's habeas action, if such action is commenced.

### 2.  Claims Based on Housing Arrangements

In addition to his claims associated with disciplinary proceedings, Plaintiff also asserts challenges based on his transfer from the New Jersey State Prison to the East Jersey State Prison, and also based on him being housed in a segregated unit rather than within the prison's general population.

Plaintiff, however, has no due process right in choosing the geographical locale or even the unit of his confinement.  See, e.g., Olim v. Wakinekona, 461 U.S. 238, 245-46 (1983) (inmates have no due process right to choose their specific place of confinement); Meachum v. Fano, 427 U.S. 215, 224-25 (1976) (same); Acevedo v. CFG Health Sys. Staff, 2010 U.S. Dist. LEXIS 120136, at *22 (D.N.J. Nov. 12, 2010) ("Plaintiff has no due process right in being housed at the unit . . . of his choice")' see also Sandin v. Conner, 515 U.S. 472 (1995) (placing an inmate in a solitary confinement does not, generally, constitute a significant, gross departure from the normal prison environment). Thus, this line of Plaintiff's challenges is facially without merit and will be dismissed with prejudice for failure to state a claim upon which relief can be granted.

### 3.  Claims Based on Lack of Response to Grievance

Plaintiff also asserts challenges based on the warden's lack of response to Plaintiff's grievance and on the lack of responses to the letters Plaintiff's sister sent to the Department of

Corrections officials.

However, the Fourteenth Amendment does not guarantee inmates a right to an investigation or a response from prison officials as to administrative grievances (or to any replies by prison officials to inmates' other complaints or demands of a grievance nature).  See, e.g., Wilson v. Horn, 971 F. Supp. 943, 947 (E.D. Pa. 1997), aff'd, 142 F.3d 430 (3d Cir. 1998); McGuire v. Forr, 1996 U.S. Dist. LEXIS 3418 at *2, n.1 (E.D. Pa. Mar. 21, 1996), aff'd, 101 F.3d 691 (3d Cir. 1996); see also Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994), cert. denied, 514 U.S. 1022 (1995); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); Brown v. G. P. Dodson, 863 F. Supp. 284, 285 (W.D. Va. 1994).  Furthermore, if construed as a First Amendment allegation -- rather than a Fourteenth Amendment one -- an assertion that an official failed to respond to an inmate's grievance fails to state a cognizable claim.  See Minnesota State Bd. for Community Colleges v. Knight, 465 U.S. 271, 285 (1984). "Nothing in the First Amendment or in . . . case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals communications." Id.; see also Foraker v. Chaffinch, 501 F.3d 231, 237 (3d Cir. 2007) (pointing out that the courts "have never held . . . that a report of a . . . misconduct . . . constitutes 'petitioning activity'" and citing

Hill v. Borough of Kutztown, 455 F.3d 225, 230-32 (3d Cir. 2006)); Bierequ v. Reno, 59 F.3d 1445, 1453 n.3 (3d Cir. 1995) (noting that, "at the founding, the Petition Clause also implied a congressional duty to respond . . . . In the Civil War era, however, Congress enacted rules abolishing the duty to respond, a change later sanctioned by the Supreme Court," and citing, inter alia, Smith v. Arkansas State Highway Employees, 441 U.S. 463, 465 (1979) (per curiam) (constitution does not require government "to listen or to respond" to citizen petition), and Minnesota State Bd.).

Plaintiff's allegations that the Department of Corrections officials failed to respond to Plaintiff's sister are, too, subject to dismissal: on the aforesaid First Amendment grounds or, alternatively, in light of Plaintiff's lack of standing to raise these challenges on behalf of his sister. See Whitmore v. Arkansas, 495 U.S. 149, 154-64 (1990) (detailing the test for jus tertii representation, one element of which is the injured party's lack of capacity to bring his/her own challenges).

Therefore, Plaintiff's challenges based on lack of responses from prison/Department of Corrections officials will be dismissed with prejudice.

### 4.   Claims Associated with Plaintiff's Grievance

Two of Plaintiff's claims are indirectly associated with Plaintiff's filing his grievance.  One of this claims asserts

that the warden is liable to Plaintiff because she failed to
prevent the altercation between Plaintiff and the Officers on
February 24, 2009.  Another claim asserts that the February 24,
2009 incident was a result of the Officer's retaliation for
Plaintiff's filing of the grievance.  None of these claims,
however, can survives <u>sua</u> <u>sponte</u> review.

### a.   Failure-to-Protect Claim

Prison officials have a duty to protect prisoners from
violence at the hands of others.  <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S.
825, 833 (1994).  Prison officials and employees may be liable
for failure to protect an inmate from the use of excessive force
if they are deliberately indifferent to a substantial risk of
serious harm to the inmate.  <u>See</u> <u>id.</u> at 834.  To plead an Eighth
Amendment failure to protect claim a plaintiff must plead facts
raising a plausible inference of: (1) a substantial risk of
serious harm; (2) the defendants' deliberate indifference to that
particular risk of harm; and (3) causation.  <u>See</u> <u>Hamilton v.</u>
<u>Leavy</u>, 117 F.3d 742, 747 (3d Cir. 1997); <u>see</u> <u>also</u> <u>Beers-Capitol</u>,
256 F.3d at 134 (citing <u>Sample v. Diecks</u>, 885 F.2d 1099, 1118 (3d
Cir. 1989), for the proposition that "to make out a claim of
deliberate indifference based on direct liability (i.e., insofar
as the defendants are alleged to have known of and ignored the
particular risk that [was] posed, the plaintiffs must meet the
test from <u>Farmer v. Brennan</u>: They must show that the defendants

knew or were aware of and disregarded an excessive risk to the
plaintiffs' health or safety, and they can show this by
establishing that the risk was obvious").

Here, Plaintiff indicates that: (a) for many years prior to
the February 2009 events, prison officers were systemically
harassing him by non-violent actions, such as causing Plaintiff's
mail to be detoured to Newark and/or by damaging Plaintiff's
property; and (b) during these years, Plaintiff once wrote a
grievance about that form of harassment to the warden.  In light
of these allegations, the Court has no basis to conclude that the
content of Plaintiff's alleged grievance could apprise the warden
about the danger of Plaintiff having a physical altercation with
the Officers on February 24, 2009.  Therefore, the warden could
not have been deliberately indifferent to the risk of such
altercation, and Plaintiff's failure-to-protect challenges have
to be dismissed for failure to state a claim for which relief can
be granted.

### b.   Retaliation Claim

Plaintiff's retaliation claim is also subject to dismissal.

To prevail on a retaliation claim, a plaintiff must
demonstrate that: (1) he engaged in constitutionally-protected
activity; (2) he suffered, at the hands of a state actor, adverse
action "sufficient to deter a person of ordinary firmness from
exercising his [constitutional] rights;" and (3) the protected

activity was a substantial or motivating factor in the state
actor's decision to take adverse action.  See Rauser v. Horn, 241
F.3d 330 (3d Cir. 2001); Anderson v. Davila, 125 F.3d 148, 160
(3d Cir. 1997) (citing Mt. Healthy City Sch. Dist. Bd. of Educ.
v. Doyle, 429 U.S. 274 (1977)).

     Here, Plaintiff conflates two qualitatively different
activities.  One such activity is Plaintiff's personal
involvement with a certain woman; that activity seemingly ended
long before the February 24, 2009, events, i.e., when the prison
officers began harassing Plaintiff in retaliation for Plaintiff's
decision to cease contacts with this woman.  However, befriending
or being romantically involved with someone, or breaking up such
a relationship is not a constitutionally protected activity upon
which a retaliation claim could be based.

     Alternatively, Plaintiff asserts that the February 24, 2009,
altercation was a result of the Officers' retaliation against
Plaintiff for filing, long ago, a grievance which the warden.
However, if Plaintiff is asserting that his personal romantic
affairs resulted in a steady animosity between him and the
Officers, and that animosity long preceded Plaintiff's filing of
his grievance and sustained unchanged long after such filing,
Plaintiff cannot establish causation between the incident that
took place in the afternoon of February 24, 2009, and his
protected activity in the form of filing a grievance long before

the altercation.   Therefore, Plaintiff's retaliation challenges
will be dismissed for failure to state a claim upon which relief
can be granted.

### 5.   Other Time-Barred Claims

In addition to the above-discussed challenges, Plaintiff's
Complaint also lists numerous other claims based on such events
as the Officers' unsuccessful efforts to recruit other inmates to
assault Plaintiff, the Officer's expropriation or destruction of
Plaintiff's personal property, etc.  However, these challenges
are without merit[4] and, in addition, they are time-barred.

_____

[4] Claims based on a hypothetical injury from other inmates
that could but did not happened are not actionable, see, e.g.,
Dawson v. Frias, 2010 U.S. Dist. LEXIS 30513 at *8 (D.N.J. Mar.
30, 2010) ("speculation as to what might or might not happen in
the future" cannot serve as a basis for a valid claim) (citing
Rouse v. Pauliilo, 2006 U.S. Dist. LEXIS 17225 (D.N.J. Apr. 5,
2006) (dismissing speculative claim and citing Kirby v.
Siegelman, 195 F.3d 1285 (11th Cir. 1999)); Pilkey v. Lappin,
2006 U.S. Dist. LEXIS 44418, at *45 (D.N.J. June 26, 2006)
("Plaintiff's [anxiety paraphrased as his claim of] fail[s] to
state a claim upon which relief may be granted"); Patterson v.
Lilley, 2003 U.S. Dist. LEXIS 11097 (S.D.N.Y. June 20, 2003)
(defendants could only be found indifferent to an existing
condition, not to a speculative future injury)), just as any
claim based on alleged injuries to the inmate's personal property
is bared by the New Jersey Tort Claim Act.  The New Jersey Tort
Claims Act ("NJTCA"), N.J. Stat. Ann. § 59:1-1 et seq., provides
all the process that is due, since it provides an adequate
post-deprivation judicial remedy to persons, including inmates
such as Plaintiff, who believe they were wrongfully deprived of
property at the hands of prison officials.  See Holman v. Hilton,
712 F.2d 854, 857 (3d Cir. 1983); Asquith v. Volunteers of
America, 1 F. Supp.2d 405, 419 (D.N.J. 1998), aff'd 186 F.3d 407
(3d Cir. 1999).  Because the NJTCA is an available remedy
providing all the process which is due, Plaintiff's due process
claim regarding confiscation of -- or injuries to -- his property
is subject to dismissal with prejudice. See id.

For purposes of the statute of limitations, Section 1983 claims are characterized as personal injury actions.  See Wilson v. Garcia, 471 U.S. 261, 275 (1983).  Accordingly, New Jersey's two-year limitations period on personal injury actions, N.J. Stat. Ann. § 2A:14-2, governs Plaintiff's claims.  See Montgomery v. DeSimone, 159 F.3d 120, 126 & n.4 (3d Cir. 1998); Cito v. Bridgewater Township Police Dept., 892 F.2d 23, 25 (3d Cir. 1989). Under N.J. Stat. Ann. § 2A:14-2, an action for an injury to the person caused by a wrongful act, neglect, or default must be commenced within two years of accrual of the cause of action. See Cito, 892 F.2d at 25; accord Brown v. Foley, 810 F.2d 55, 56 (3d Cir. 1987).

"[A] federal cause of action accrues when the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim." Disabled in Action of Pennsylvania v. Southeastern Pennsylvania Transp. Authority, 539 F.3d 199, 209 (3d Cir. 2008).

Here, Plaintiff's altercation with the Officers occurred on February 24, 2009, while the alleged harassment activities took place many months or even years prior.  Moreover, Plaintiff's Complaint was received on February 15, 2011, and -- being signed on February 9, 2011 -- could not have been handed to Plaintiff's prison officials for mailing to the Court prior to that February 9, 2011, date.  In other words, Plaintiff's Complaint was

submitted within two weeks of Plaintiff's period of limitation
running out for the purposes of challenging the events of
February 24, 2009.  That, in turn, means that all Plaintiff's
claims based on the events that took place prior to February 9,
2009, are time-barred.  Granted Plaintiff's extensive
administrative challenges and challenges in the state courts
during the years 2009 and 2010, Plaintiff's claims based on the
events that took place before February 9, 2009, cannot be subject
to equitable tolling.[5]  Therefore, all Plaintiff's claims based

---

[5] When the statute of limitations defense is obvious from
the face of the complaint and no development of the factual
record is required to determine whether dismissal is appropriate,
sua sponte dismissal under 28 U.S.C. § 1915 is permissible.  See
Smith v. Delaware Cnty. Court, 260 Fed. App'x 454, 455 (3d Cir.
Jan. 10, 2008).  "Equitable tolling functions to stop the statute
of limitations from running where the claim's accrual date has
already passed."  Oshiver v. Levin, 38 F.3d 1380, 1387 (3d Cir.
1994).  "Generally, a litigant seeking equitable tolling bears
the burden of establishing two elements: (1) that he has been
pursuing his rights diligently, and (2) that some extraordinary
circumstance stood in his way."  Pace v. DiGuglielmo, 544 U.S.
408, 125 S. Ct. 1807, 1814, 161 L. Ed. 2d 669 (2005).  The Third
Circuit instructs that equitable tolling is appropriate when "a
[plaintiff] faces extraordinary circumstances that prevent him
from filing a timely [complaint] and the [plaintiff] has
exercised reasonable diligence in attempting to investigate and
bring his claims."  LaCava v. Kyler, 398 F.3d 271, 275-276 (3d
Cir. 2005).  Mere excusable neglect is not sufficient.  See id.;
Merritt v. Blaine, 326 F.3d 157, 168 (3d Cir. 2003); Jones v.
Morton, 195 F.3d 153, 159 (3d Cir. 1999).  Extraordinary
circumstances have been found where: (1) the defendant has
actively misled the plaintiff; (2) the plaintiff has in some
extraordinary way been prevented from asserting his rights; (3)
the plaintiff has timely asserted his rights mistakenly in the
wrong forum, or (4) the court has misled a party regarding the
steps that the party needs to take to preserve a claim.  See id.;
see also Brinson v. Vaughn, 398 F.3d 225, 230 (3d Cir. 2005).
Here, Plaintiff's extensive administrative challenges and state

on the alleged harassment actions by correctional officers are subject to dismissal, as untimely.

### 6. **Excessive Force Claim**

There is, however, one claim in the Complaint that is neither time-barred nor facially meritless, nor subject to the bar posed by the Rooker-Feldman doctrine. That claim is composed of Plaintiff's allegations that, during his February 24, 2009, altercation with the Officers, Plaintiff was subjected to excessive force.

The landmark Supreme Court case in the Eighth Amendment excessive force area is Hudson v. McMillian, 503 U.S. 1 (1992). The Hudson Court held that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in Whitley [475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 6-7. In doing so, the Court jettisoned the traditional objective prong inquiry for establishing an Eighth Amendment claim. See id. at 22-23 ("In the context of claims alleging the excessive use of physical force, the Court then asserts, the serious deprivation requirement is satisfied by no serious

---

actions indicate that Plaintiff experienced no extraordinary circumstances warranting a consideration of equitable tolling.

deprivation at all.  When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated.  . . .  Ascertaining prison officials' state of mind, in other words, is the only relevant inquiry in deciding whether such cases involve cruel and unusual punishment. . . .  The sum and substance of an Eighth Amendment violation, the Court asserts, is the unnecessary and wanton infliction of pain.  This formulation has the advantage, from the Court's perspective, of eliminating the objective component") (citations and quotation marks omitted); Brooks v. Kyler, 204 F.3d 102, 108 (3d Cir. 2000) ("In Hudson, the Court distinguished between prisoner conditions-of-confinement . . . claims, on the one hand, and wanton use of unnecessary force claims on the other.  Although the former kind of claim cannot survive without evidence that a deprivation was 'harmful enough' . . ., the latter kind of claim has no such requirement").

    Consequently, under the Eighth Amendment, the Court must examine, subjectively, "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."[6]  Whitley v.

_____

    [6]
    It shall be noted that the de minimis use of force, which is itself not repugnant to human decency, cannot state an Eighth Amendment claim of excessive force.  See, e.g., Hudson, 503 U.S. at 9-10 ("The Eighth Amendment's prohibition of cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind'") (internal

Albers, 475 U.S. 312, 320-21, 106 S. Ct. 1078 (1986) (citation

omitted).  Here, taking Plaintiff's allegations as true, this

Court finds that Plaintiff's Eighth Amendment claim appears

plausible, within the meaning of Iqbal, and should not be

dismissed at the sua sponte screening stage.

V.   **CONCLUSION**

For the foregoing reasons, the Court will grant Plaintiff's

application to file the Complaint without prepayment of the

filing fee.

The Court will proceed Plaintiff's Eighth Amendment

excessive force challenges against Officers Fry, Nagy, Perez,

---

citation and quotation marks omitted).  This is not to say that a
fact-finder at trial will disregard the extent of the injuries
suffered by a plaintiff.  As the Supreme Court observed in Hudson:

> Under the Whitley approach, the extent of injury suffered by
> an inmate is one factor that may suggest "whether the use of
> force could plausibly have been thought necessary" in a
> particular situation, "or instead evinced such wantonness with
> respect to the unjustified infliction of harm as is tantamount
> to a knowing willingness that it occur."  475 U.S. 312, 321.
> In determining whether the use of force was wanton and
> unnecessary, it may also be proper to evaluate the need for
> application of force, the relationship between that need and
> the amount of force used, the threat "reasonably perceived by
> the responsible officials," and "any efforts made to temper
> the severity of a forceful response." Id.  The absence of
> serious injury is therefore relevant to the Eighth Amendment
> inquiry, but does not end it.

Hudson, 503 U.S. at 7.

The Court finds that at this juncture it is premature to
determine whether Plaintiff's injuries – a swollen forehead and a
swollen eye – were such to indicate, as a matter of law, that the
use of force was, in fact, de minimis.

Tyson and Wojciechowski past the <u>sua</u> <u>sponte</u> dismissal stage.

Plaintiff's habeas challenges will be dismissed without prejudice to initiation of an appropriate habeas action.

The remainder of Plaintiff's challenges will be dismissed with prejudice.

An appropriate Order accompanies this Opinion.


                              s/Freda L. Wolfson
                              **FREDA L. WOLFSON,**
                              **United States District Judge**

Dated: April 28, 2011